UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION
Civil Case No. 2:15-cv-14297-RLR – Judge Rosenberg and Magistrate Judge Lynch

| | |
|---|---|
| JAMES WILCHER, MARY POWER, | ) |
| JESSIE HEATON as parent and natural | ) |
| guardian of DYLAN HEATON, and | ) |
| JUSTIN KOLOGE by and through | ) |
| Jeremy M. Kologe and Theresa F. Kologe | ) |
| as plenary guardians of his person and | ) |
| property, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HEALTHPORT TECHNOLOGIES, LLC, | ) |
| LAWNWOOD MEDICAL CENTER, INC., | ) |
| HCA HEALTH SERVICES OF FLORIDA, | ) |
| INC., d/b/a ST. LUCIE MEDICAL | ) |
| CENTER, and ST. MARY'S MEDICAL | ) |
| CENTER, INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## DEFENDANT HEALTHPORT TECHNOLOGIES, LCC'S MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND MEMORANDUM IN SUPPORT

NOW COMES Defendant HealthPort Technologies, LLC ("HealthPort"), and hereby moves to dismiss the Plaintiffs' complaint a) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that this Court lacks subject matter jurisdiction to hear Plaintiffs' claims, and b) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Plaintiffs have failed to state a claim upon which relief can be granted.

1

## I.      <u>INTRODUCTION</u>

Plaintiffs are alleged to be four Florida residents who have either requested copies of their medical records or would like to obtain copies of their medical records from their healthcare providers.  Plaintiffs complain that the rates that Defendants are proposing to charge for copies of these medical records, or have charged them, are not in compliance with the Health Insurance Portability and Accountability Act ("HIPAA").  As such, the present case involves a transparent attempt by Plaintiffs to assert a private cause of action for damages and declaratory relief under HIPAA, a legal proposition that has been rejected by the U.S. Congress, the U.S. Department of Health and Human Services ("DHHS"), state courts in Florida, and virtually every single U.S. federal court to consider the issue.  Since Plaintiffs have no private cause of action under HIPAA, there is no justiciable issue for this Court to resolve and no subject matter upon which this Court may base jurisdiction.

Plaintiffs cleverly seek to avoid the substantial body of law that stands in the way of a private cause of action under HIPAA through a number of tactics.  For instance, Plaintiffs simply allege that the alleged failure of Defendants to comply with HIPAA provides a basis for various common law causes of action in Florida, such as reformation, conversion, unjust enrichment, collection of an unlawful debt, and a claim under the Florida Deceptive Unfair Trade Practices Act ("FDUTPA").  This unabashed effort to elevate form over substance, however, by applying different labels to their claim seeking a private remedy under HIPAA, cannot create such a cause of action where none exists.  Other courts have been quick to find as much.  Moreover, the courts that have considered the issue have unequivocally held that no federal question jurisdiction exists to resolve such state laws claims.

Plaintiffs also assert that they are entitled to a declaratory relief on a variety of questions and topics designed to support the proposition that they are entitled to relief under HIPAA.  This claim must also fail for a variety of reasons.  *First*, the Plaintiffs cannot demonstrate a real and immediate threat of future injury to satisfy the injury in fact requirement for a declaratory judgment, and therefore, any declaratory judgment as to any of the Plaintiffs would be purely advisory in nature.  *Second*, to the extent Plaintiffs assert a claim for declaratory judgment under FDUTPA, an alleged violation of HIPAA cannot form the basis for a FDUTPA claim as that statute is only triggered by statutes involving unfair trade practices.  HIPAA is not such a statute.  In fact, Florida has statutes governing the charges that Defendants may impose for copies of

medical records.  No violation of those statutes is even alleged.  *Third*, Plaintiffs argue that since one Plaintiff has been threatened with litigation over outstanding charges, that Plaintiff is entitled to a declaration of her rights and HIPAA's preemption of Florida law pursuant to the Supremacy Clause.  The United States Supreme Court, however, has recently held that no private cause of action exists under the Supremacy Clause.  Armstrong v. Exceptional Child Ctr., Inc., 135 S.Ct. 1378, 191 L.Ed. 2d 471 (2015).  Nonetheless, and in order to avoid any claim that there is a threat of litigation against Plaintiffs, HealthPort has released the Plaintiffs from any such threat. [See Exhibit A, attached hereto].  Thus, under any possible view of the facts and law, there is no longer even an arguable case or controversy sufficient to provide this Court with jurisdiction.

Finally, even if this Court had jurisdiction to consider the state law claims asserted by Plaintiffs here (it does not), the Plaintiffs' claims must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for all the reasons discussed in greater detail below.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiffs assert the following facts in their complaint and which are summarized here solely for purposes of the current motion to dismiss without regard for their truth or falsity. HealthPort contracts with hospitals, health systems, physician practices and clinics to process and fulfill medical records requests.  [See Complaint at ¶ 6].  HealthPort provides these services to numerous healthcare providers, and processes thousands of requests for medical records each day.  [Id. at ¶¶ 8-9].  When providing copies of medical records that are requested, HealthPort is governed by a variety of statutes and regulations, including HIPAA in certain circumstances. [Id. at ¶ 13].

Counsel for the named Plaintiffs sent correspondence that requested copies of medical records for three of the named Plaintiffs from their healthcare providers and were billed for these requests.  [Id. at ¶¶ 29-657].  The remaining named Plaintiff merely considered ordering medical records but apparently never actually did so.  [Id. at ¶¶ 58-66].  The hospitals or healthcare service providers from whom the records were requested have contracts with HealthPort to fulfill medical records requests made to them.  [Id. at ¶¶ 32, 37-39, 47-49, 60].  Plaintiffs contend that the charges requested by HealthPort are in excess of those allowed under HIPAA which allegedly preempts Florida statutes to the contrary.  [Id. at ¶¶ 77-81].

3

A.      **The Named Plaintiffs.**

The named Plaintiffs reportedly fall into three categories:

1) those who are uncertain of their obligation to pay for medical records provided by Defendants and could be sued by Defendants for collection; 2) those who believe that they have overpaid for copies of their medical records; and 3) those who would like to obtain copies of medical records and are uncertain of their obligation to pay for them per page.

[Id. at ¶ 19].  More specifically,

1.  The Category 1 Plaintiff is Mary Power.  Counsel for Power sent correspondence that requested copies of her son's medical records pursuant to Florida Statute § 766.204 from Martin Memorial Hospital Tradition.  [Id. at ¶ 40; and Exhibit E to the Complaint].  HealthPort invoiced counsel for Power for the records pursuant to a contract to provide records, and that invoice has not been paid.  [Complaint at ¶¶ 23 (a) and (e), 40, 41, 43, 67, 68, 73, 82,  91 and 94; and Exhibit F to the Complaint].

2.  The Category 2 Plaintiffs are James Wilcher and  Justin Kologe by and through Jeremy M. Kologe and Theresa F. Kologe as plenary guardians of his person and property.  As to Wilcher, counsel for Wilcher sent correspondence that requested Wilcher's late wife's medical records pursuant to Florida Statute § 766.204 from Defendant St. Mary's Medical Center. [Complaint at ¶¶ 29-31, Exhibit A to the Complaint].  HealthPort invoiced counsel for Wilcher for the records pursuant to a contract to provide records, and the invoice was paid.  [Complaint at ¶¶ 23(a) and (e), 32, 34-35; 67, 68, 73, 82, 91 and 94; Exhibits B and D to the Complaint]. As to Kologe, counsel for Kologe sent correspondence that requested copies of medical records from Defendant St. Lucie Medical Center.  [Complaint at ¶ 50, Exhibit G to the Complaint].  HealthPort invoiced counsel for Kologe for the records pursuant to a contract to provide records, and the invoice was paid. [Complaint  at ¶¶ 23 (a) and (e), 52, 53, 67, 68, 73, 82, 91 and 94; Exhibit H to the Complaint].

3.  The Category 3 Plaintiff is represented by Jessie Heaton as parent and natural guardian of Dylan Heaton. Heaton considered obtaining a copy of her child's

> medical records, but never did so.  She never ordered medical records, received
> medical records, or was invoiced for medical records.  [Complaint at ¶¶ 59, 66].

Some of the Plaintiffs' correspondence specifically requested records pursuant to Florida statutes, and demanded that the records be provided within only 10 days, in accordance with those statutes.  [See e.g., Exhibits A, E to the Complaint].  Nonetheless, Plaintiffs do not allege that HealthPort failed to charge rates in compliance with those Florida statutes.

HealthPort has provided, along with this Motion to Dismiss, a release of all of the named Plaintiffs from any and all causes of action or claims, existing as of the date of the release and stipulation, that it had or may have had related to the named Plaintiffs' requests for medical records or invoices related to the same.  [See Exhibit A attached hereto].

**B.      The Plaintiffs' Claims.**

Plaintiffs have asserted seven separate causes of action, each and every one of which is based upon Plaintiffs' contention that they have a private right of action under HIPAA. Specifically,

- Count I seeks a declaratory judgment under Florida law that Plaintiffs do have a private right of action under HIPAA, and that HealthPort was required to charge Plaintiffs for medical records in compliance with HIPAA.  [Complaint at ¶¶ 77, 83].

- Count II seeks reformation of a contract to require HealthPort to refund fees paid that were not in compliance with HIPAA. [Id. at ¶¶ 94, 95].

- Count III asserts a claim for unjust enrichment based upon the argument that HealthPort should have charged rates for copies set forth in HIPAA.  [Id. at ¶¶ 96-98].

- Count IV asserts a claim for conversion seeking the return of amounts paid over and above rates set forth in HIPAA.  [Id. at ¶¶ 99-101].

- Counts V and VII assert claims under the  Florida Deceptive and Unfair Trade Practices Act and damages related to the same, based upon HealthPort charging rates other than those set forth in HIPAA.  [Id. at ¶¶ 109, 121].

- Count VI asserts a claim for unlawful debt based upon HealthPort's attempt to collect payment for services that were different than those set forth in HIPAA.  [Id. at ¶¶116-119].

Accordingly, each and every one of the claims asserted by the named Plaintiffs in this purported class action is premised on, and hinges entirely upon, the provisions of HIPAA.

### III.    ARGUMENT AND CITATION TO AUTHORITY

**A.    Plaintiffs Have No Private Right of Action Under HIPAA, and Thus All of Plaintiffs' Claims Should be Dismissed.**

Plaintiffs' claims all hinge upon their argument that in charging for copies of medical records, HealthPort allegedly violated the fee provisions for copies of medical records set forth in HIPAA.   HIPAA, however, provides no express or implied private right of action.   Inasmuch as Plaintiffs can assert no such private cause of action, Plaintiffs have failed to allege a justiciable case or controversy or state a cognizable claim.   Plaintiffs' claims must therefore be dismissed under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.   See Acara v. Banks, 470 F.3d 569, 572 (5th Cir. 2006) (because no private right of action exists under HIPAA, the court lacked federal subject matter jurisdiction over the asserted claims).

**1.    HIPAA Does Not Create A Private Right of Action.**

It is well settled that HIPAA does not create a private right of action.   See 65 Fed. Reg. 82601 (Dec. 28, 2000)("Under HIPAA, individuals do not have a right to court action."); Crawford v. City of Tampa, 397 F. App'x 621, 623 (11th Cir. 2010) ("we agree that no private right of action exists under [HIPAA].") (citing Acara, 470 F.3d at 572); Bradley v. Pfizer, Inc., 440 F. App'x 805, 809 (11th Cir. 2011) (same); Sneed v. Pan Am. Hosp., 370 F. App'x 47, 50 (11th Cir. 2010) (declining "to hold that HIPAA creates [either] a private cause of action ... or rights that are enforceable through [42 U.S.C.] § 1983."); Bourguignon v. Johnson, 2015 WL 1348446, at *3 (M.D. Fla. Mar. 24, 2015) ("it is well settled that HIPAA does not create a private right of action.").   Accordingly, Plaintiffs do not have a private right of action to bring a claim that HealthPort violated HIPAA.   Because each and every one of Plaintiffs' claims is premised upon a private right of action under HIPAA, Plaintiffs' claims should be dismissed.

**2.    The Secretary of Health and Human Services, and Not the Federal Courts, Has Jurisdiction For Enforcing Violations of HIPAA as Alleged in this Matter.**

Congress intended for the Secretary of Health and Human Services, and not the federal courts, to have the jurisdiction over enforcement of HIPAA as alleged in this matter.   See 42 U.S.C. § 1320d-5.   See also Acara, 470 F.3d at 571 ("HIPAA limits enforcement of the statute to the Secretary of Health and Human Services."); Jackson v. Mercy Behavioral Health, 2015 WL 401645, at *3 (W.D. Pa. Jan. 28, 2015) ("The ability to bring an enforcement action to remedy

HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens."); Sheppard v. Johnson, 2011 WL 5547129, at *3 (N.D. Fla. Oct. 14, 2011), report and recommendation adopted, 2011 WL 5547122 (N.D. Fla. Nov. 15, 2011) ("provisions of HIPAA may only be enforced by the Secretary of Health and Human Services.  As plaintiff is a private actor, he may not allege a violation of the Act."); Johnson v. Quander, 370 F. Supp. 2d 79, 100 (D.D.C. 2005) aff'd, 440 F.3d 489 (D.C. Cir. 2006) (noting that the Secretary of Health and Human Services was empowered to enforce HIPAA, and "[a]ccordingly because no private right of action exists under the HIPAA, this Court does not have subject matter jurisdiction over this claim and it must be dismissed.").

Moreover, not only is the Secretary of DHHS charged with the jurisdiction to enforce HIPAA, the DHHS has been actively enforcing the HIPAA provisions and addressing complaints under HIPAA since its inception.  See DHHS website, visited September 14, 2015, http://www.hhs.gov/ocr/privacy/hipaa/enforcement/highlights/index.html ("Since the compliance date of the Privacy Rule in April 2003, OCR has received over 118,939 HIPAA complaints and has initiated over 1,224 compliance reviews.  We have resolved ninety-four percent of these cases (111,465).").  The DHHS has also exercised discretion over the issue relating to fees that providers may charge for providing medical records.  In fact, the DHHS has announced plans to address one of the issues raised in this action regarding fees for copies of medical records by the end of October of 2015.  See http://nist.gov/itl/csd/hipaa-security2015-webcast-archive.cfm, at Part 5 from 1:10 through 1:14, speech of Devin McGraw, Health and Human Services Office for Civil Rights, Deputy Director of Information Privacy.  [See Transcript of Speech, attached hereto at Exhibit B].[1]  As a matter of separation of powers, this Court is required to defer to the DHHS where Congress has expressly assigned to it the responsibility for enforcement of these laws, and precluded individuals from enforcing such laws.  See Hardison v. Cohen, 375 F.3d 1262, 1265 (11th Cir. 2004) ("under 'this country's long-respected separation of powers doctrine, courts should be hesitant to provide an aggrieved plaintiff with a remedy where Congress intentionally has withheld one.'") (citing Lee v. Hughes, 145 F.3d 1272, 1276 (11th Cir. 1998) (same).  Whatever guidance is given by DHHS, this Court will lack jurisdiction to countermand it here.

---

[1]     This Court may take judicial notice of the public records indicating the actions of the DHHS.  See Rule 201(b) F.R.E.; Horne v. Potter, 392 Fed. Appx. 800, 802 (11th Cir. 2010).

3.     **Plaintiffs' State Causes of Action Are All Attempts to Assert a Private Right of Action Under HIPAA.**

To mask their attempt to assert a private right of action under HIPAA, Plaintiffs have cleverly folded their allegation that HIPAA was violated into a variety of state law causes of action.  Plaintiffs are not the first plaintiffs who attempted such an evasion of the prohibition on private causes of action under HIPAA – others have tried a similar ploy and failed.  In fact, this is not the first time that Plaintiffs' counsel in this very case has made such an argument.  In King v. JFK Medical Center Limited Partnership d/b/a HealthPort Technologies, LLC, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, the assertion was made that HealthPort had charged the plaintiff in that case more for copies of medical records than allowed by HIPAA.  See Order Granting Motion to Dismiss, attached hereto at Exhibit C, at p. 1.  The plaintiff argued that HealthPort's actions constituted an unfair and deceptive trade practice under FDUTPA and, as here, requested that the court enter a declaratory judgment that the defendants could only charge rates consistent with HIPAA.  Id.  The court in King held that "[i]t is clear that there is no private right of action for a violation of HIPAA," and that the defendants' alleged violation of HIPAA could not "be the basis of a FDUTPA claim."  Id. at pp. 2-3.  Judge Johnson, writing for the court, further held that "because HIPAA does not provide for a private right of action, any declaratory judgment entered by this Court would only be advisory or it would usurp the jurisdiction of the Secretary of Health and Human Services, which is in charge of enforcing violations of HIPAA."  Id.

Judge Johnson is hardly alone in reaching such a conclusion.  Other courts have similarly held that, because there is no private right of action under HIPAA, a plaintiff cannot attempt to enforce rights set forth under HIPAA by simply claiming that a violation of HIPAA equates to a violation of state law or a violation of a different federal law.  For example, the United States Court of Appeals for the Eleventh Circuit has held that a plaintiff cannot base a claim under 28 U.S.C. § 1983 on an allegation that HIPAA was violated.  See Sneed v. Pan Am. Hosp., 370 F. App'x 47, 50 (11th Cir. 2010) ("we decline to hold that HIPAA creates a private cause of action, or rights that are enforceable through § 1983."); also see Bourguignon v. Johnson, 2015 WL 1348446, at *3 (M.D. Fla. Mar. 24, 2015) (plaintiffs' allegation that HIPAA was violated could not support an alleged claim of "civil rights violation").

8

Courts have similarly rejected attempts to assert a state court action where it is contended that a violation of HIPAA is an element of the state court claim.  In Baum v. Keystone Mercy Health Plan, 826 F. Supp. 718, 721 (E.D. Pa. 2011), for example, the plaintiff filed a complaint in state court asserting claims for 1) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection law, 2) negligence, and 3) negligence per se related to the defendant's alleged breach of the privacy provisions of HIPAA.  The defendants sought to remove the action, arguing that federal question jurisdiction existed because the claims necessarily involved the interpretation of HIPAA.  Id. at 720.  The Court denied removal and remanded the case back to state court noting that:

> [i]n spite of the fact that the personal data at the heart of this case is protected by HIPAA, this is a fairly straightforward state-law tort case . . . If I were to find jurisdiction and allow this case to proceed in federal court, I would federalize an entire category of state tort claims when Congress has not indicated any intent to do so. Such a finding would greatly disturb the balance between federal and state judicial responsibilities because almost any litigation within the medical industry would  have the potential for the disclosure of information protected by HIPAA.

Id.  Similarly, here, because Plaintiffs' claims are all attempts to assert a non-existent private cause of action under HIPAA under the guise and label of a state law claim, Plaintiffs' claims should be dismissed.

**B.      No Federal Question Jurisdiction Exists Under 28 U.S.C. § 1331.**

The only basis for jurisdiction asserted by plaintiffs is premised upon the alleged existence of a federal question.  See Complaint at ¶ 1 ("This Court has jurisdiction pursuant to 28 U.S.C. § 1331"); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.").  This action does not arise under the Constitution, laws, or treaties of the United States.  The Plaintiffs assert only state law claims.  This Court, therefore, lacks subject matter jurisdiction.

The Eleventh Circuit has addressed this tactic of asserting federal question jurisdiction over state law claims on prior occasions and held that federal question jurisdiction is only available where "a substantial, disputed question of federal law is a necessary element of a state cause of action."  City of Huntsville v. City of Madison, 24 F.3d 169, 171-72 (11th Cir. 1994) (citing Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986)).  In City of Huntsville, the Eleventh Circuit went on to examine whether a federal statute that does not give a private right of action could present a federal

interest substantial enough to confer federal question jurisdiction, and held: "[w]e conclude that it will be only the exceptional federal statute that does not provide for a private remedy but still raises a federal question substantial enough to confer federal question jurisdiction when it is an element of a state cause of action."  City of Huntsville, 24 F.3d at 174 (citing Merrell Dow, 478 U.S. at 811–17, 106 S.Ct. at 3234–37; Franchise Tax Bd., 463 U.S. at 12, 22–27, 103 S.Ct. at 2848, 2853–56 (holding that the California Franchise Tax Board's claims requiring construction of ERISA and/or an adjudication of its preemptive effects and constitutionality, where ERISA's private cause of action accrued only to certain parties not including a state, did not turn on a substantial question of federal law)).

This fundamental issue of whether such federal court jurisdiction exists has also been considered in similar fashion in the HIPAA context.  For instance, the United States District Court for the Western District of Washington specifically addressed whether federal question jurisdiction exists over state law claims premised upon violations of HIPAA's medical record fee provisions.  In Dickman v. MultiCare Health Sys., 2015 WL 3477178, at *3 (W.D. Wash. June 2, 2015), the plaintiff filed suit alleging that the defendants had charged rates for medical records in violation of HIPAA, and asserted claims for declaratory judgment, a violation of Washington's Consumer Protection Act, and negligence.  Id.  Just as in the present action, all of the plaintiff's state law claims hinged upon alleged violations of HIPAA's fee provisions.  Id. The court in that case held that "[d]efendants have failed to show that federal question jurisdiction is proper in this case. Although [the plaintiff's] state law claims are predicated on HIPAA violations, her claims do not fall within the 'special and small category' of cases that implicate significant federal issues."  Id. at *3.

The District of South Carolina also specifically addressed whether federal question jurisdiction existed over state law claims allegedly premised on allegations involving HIPAA. In McKnight v. Surgical Associates of Myrtle Beach LLC, 2011 WL 5869800, at *5 (D.S.C. Nov. 18, 2011), the court noted that the plaintiff had invoked HIPAA as one element of her claim under the South Carolina Unfair Practices Act.  The court found that no substantial federal question existed where HIPAA violations were brought as part of state-law claims, and accordingly, no federal question jurisdiction existed.  Id.  There are numerous other holdings

from district courts to the same effect.[2]  This Court is therefore required to dismiss plaintiffs' claims for lack of subject matter jurisdiction.

**C.      Plaintiffs' Claims For Declaratory Relief Fail For Lack of Justiciability and Subject Matter Jurisdiction.**

Whether the Plaintiffs are asserting a claim for declaratory judgment under FDUTPA, the Florida Declaratory Judgment Act, or the federal Declaratory Judgment Act, their claims should be dismissed.

**1.      FDUPTA Does Not Provide a Basis for Declaratory Relief for Any Plaintiff.**

As set forth below in Section III(D)(4), Plaintiffs' claims for FDUTPA fail as a matter of law.  Accordingly, Plaintiffs' claim for declaratory relief under FDUTPA also fail as a matter of law.  See Complaint at ¶ 23(k); Fla. Stat. 501.211(1).

**2.      This Court Does Not Have Jurisdiction to Issue the Impermissible Advisory Opinion Sought By Plaintiffs.**

Assuming Defendants are attempting to assert a declaratory action under the federal Declaratory Judgment Act, or the Florida Declaratory Judgment Act, this Court does not have jurisdiction to hear such claims.  Under the federal Declaratory Judgment Act, 28 U.S.C.A. § 2201, and Article III of the U.S. Constitution, a declaratory judgment may only be issued in cases of "actual controversy."  For a declaratory judgment to issue:

---

[2]      See, e.g., Davidson v. Nantworks, LLC, 2015 WL 3970121, at *1-2 (N.D. Fla. June 30, 2015) (noting that "federal courts have rejected the 'expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door.'" (citing Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005); Baum v. Keystone Mercy Health Plan, 2011 WL 4632569, at *3 (E.D.Pa. Oct. 5, 2011) ("In spite of the fact that the personal data at the heart of this case is protected by HIPAA, this is a fairly straightforward state-law tort case."); Med 4 Home, Inc. v. Geriatric Servs. of Am., Inc., 2008 WL 4905499, at *3 (D. Ariz. Nov. 13, 2008) (explaining that one cannot bring an otherwise non-existent federal claim to establish federal jurisdiction and remanding HIPAA claim based, in part, on the absence of a private right of action and the fact that the underlying case was a standard state-law claim); K.V. v. Women's Healthcare Network, LLC, 2007 WL 1655734, at *1 (W.D. Mo. June 6, 2007) ("Additionally, the state law claim . . . does not raise a substantial federal question of great federal interest. The privacy standards imposed by HIPAA are not uniquely federal and do not raise any issue of great federal interest."); Wright v. Combined Ins. Co. of Am., 959 F.Supp. 356, 363–64 (N.D. Miss. 1997) (remanding case because there was no evidence of manifest congressional intent in HIPAA to create a federal cause of action which is removable)).

there must be a substantial continuing controversy between two adverse parties.  The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. . . . Thus, in order for this Court to have jurisdiction to issue a declaratory judgment . . . [plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future.

Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999).  See also Yahweh v. U.S. Parole Comm'n, 428 F. Supp. 2d 1293, 1296 (S.D. Fla. 2006) (in "an action for a declaratory judgment, a plaintiff must prove not only an injury, but also a 'real and immediate threat' of future injury in order to satisfy the 'injury in fact' requirement.").  If there is not a real and immediate threat of future injury, "a judicial determination of plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement."  Glen v. Club Mediterranee S.A., 365 F. Supp. 2d 1263, 1272-73 (S.D. Fla. 2005) aff'd, 450 F.3d 1251 (11th Cir. 2006) ("While the Declaratory Judgment Act confers upon a court the power to 'declare the rights and other legal remedies of any interested party seeking such declaration, whether or not further relief is or could be sought,' it does not authorize this Court to issue an advisory opinion regarding a defendant's alleged violation of a federal statute.").[3]

Neither the Category 2 nor the Category 3 Plaintiffs have ever alleged a bona fide controversy, or a real and immediate threat of a future injury, about which this Court could render a declaratory judgment.  Instead, the Category 2 Plaintiffs allege that they were charged incorrectly *in the past*,[4] and the Category 3 Plaintiff alleges no injury whatsoever.[5]  Furthermore,

---

[3]     Florida's Declaratory Judgment Act, Fla. Stat. § 86.011, similarly provides that to obtain a declaratory judgment, a party must allege (1) a bona fide adverse interest between the parties concerning a power, privilege, immunity or right of the plaintiff; (2) the plaintiff's doubt about the existence or non-existence of this right or privilege; and (3) that plaintiff is entitled to have this doubt removed.  See e.g., Floyd v. Guardian Life Ins. Co., 415 So.2d 103, 104 (Fla. 3d DCA 1982).  Absent a "bona fide need for declaration based on present, ascertainable facts," the Court lacks jurisdiction to render declaratory relief.  Santa Rosa Cnty. v. Admin. Comm'n, Div. of Admin. Hearings, 661 So. 2d 1190, 1193 (Fla. 1995) (courts will not render "in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the *possibility* of legal injury on the basis of a hypothetical 'state of facts which have not arisen' and are only 'contingent, uncertain, [and] rest in the future.'").

[4]     Holt v. Crist, 233 Fed. App'x 900 (11th Cir. 2007) (where allegations concerned past conduct, and not a continuing injury, the court has no jurisdiction to issue a declaratory judgment).

because of the release HealthPort has provided, the Category 1 Plaintiff also cannot now argue that she has a threat of real and immediate future injury, and thus her claims are now moot as set forth in Section III(C)(3) below.  Accordingly, the Plaintiffs cannot satisfy the 'injury in fact' requirement.  This Court simply does not have the jurisdiction to issue the declaratory judgment the Plaintiffs seek.

>    **3.      The Plaintiffs Do Not Have a Cause of Action Under the Supremacy Clause.**

Plaintiffs' declaratory judgment claim seeks a declaration that HIPAA preempts Florida state law.  [Complaint at ¶¶ 78-81].  While it is true that a plaintiff may obtain declaratory relief in the form of a declaration that a state law is preempted by HIPAA in rare circumstances, those circumstances are not present here.  Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1384, 191 L. Ed. 2d 471 (2015).

The Plaintiffs' claim for relief is ostensibly based upon a doctrine first set forth in Ex parte Young, 209 U.S. 123 (1908).  Under this doctrine, a litigant is entitled to seek a declaration that a state law is preempted by federal law when: a)  there is an actual case or controversy where the plaintiff actually fears that they will need to assert the Supremacy Clause of the U.S. Constitution[6] as a defense in that case or controversy; and b) there must be a threat of a government enforcement action against the plaintiff.  See Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378 at 1384, 191 L. Ed. 2d 471 (2015) ("as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an

---

[5]        Indeed, the Category 3 Plaintiff has no standing to assert any of her claims since she has alleged no injury whatsoever.  "To have standing, a plaintiff must establish (1) an injury in fact, which is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the causal conduct; and (3) a substantial likelihood that a favorable decision will redress the injury."  Galstaldi v. Sunvest Communities USA, LLC, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009). See also, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (for standing to exist, "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.")(citations omitted).

[6]        U.S. Const. Art. VI, Cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

injunction upon finding the state regulatory actions preempted.") (<u>citing</u> <u>Ex parte Young</u>);
<u>Douglas v. Indep. Living Ctr. of S. California, Inc.</u>, 132 S. Ct. 1204, 1213, 182 L. Ed. 2d 101
(2012)(Justice Roberts dissent, joined by Justices Scalia, Thomas and Alito) (explaining the
doctrine from <u>Ex parte Young</u>, as involving 'the pre-emptive assertion in equity of a defense that
would otherwise have been available in the State's enforcement proceedings at law.'"); <u>Georgia</u>
<u>Latino Alliance for Human Rights v. Governor of Georgia</u>, 691 F.3d 1250, 1261 (11th Cir. 2012)
(same).

 The Plaintiffs cannot demonstrate that either of the requirements necessary to implement
the <u>Ex parte Young</u> exception are present here, however.   First, no bona fide dispute exists
between any of the named Plaintiffs and HealthPort, and none of the Plaintiffs have the threat of
real or immediate injury.  <u>See</u> Release, attached as Exhibit A.  Since there is no bona fide dispute
or case or controversy, of even a threat of one, Plaintiffs have no ability to invoke the Supremacy
Clause.  <u>See</u> <u>Cameron–Grant v. Maxim Healthcare Servs., Inc.</u>, 347 F.3d 1240, 1245 (11th Cir.
2003) (a case is moot "when it no longer presents a live controversy with respect to which the
court can give meaningful relief."); <u>31 Foster Children v. Bush</u>, 329 F.3d 1255, 1263 (11th Cir.
2003) (same); <u>Boise v. ACE USA, Inc.</u>, 2015 WL 4077433, at *4 (S.D. Fla. July 6, 2015) ("[A]
class action must as a general rule be dismissed for mootness when the personal claims of the
named plaintiffs are satisfied and no class has properly been certified.") (citations omitted).  <u>See</u>
<u>also</u> <u>Fischer v. Bar Harbor Banking & Trust Co.</u>, 857 F.2d 4, 6-7 (1st Cir. 1988) (releasing a lien
rendered plaintiff's request for declaratory judgment moot); <u>Karas v. Katten Muchin Zavis</u>
<u>Rosenman</u>, 2006 WL 3635330, at *1 (S.D.N.Y. Dec. 12, 2006) aff'd sub nom., <u>Karas v. Katten</u>
<u>Muchin Rosenman LLP</u>, 2009 WL 38898 (2d Cir. Jan. 8, 2009) (release of obligations not to
compete rendered claim for declaratory judgment moot).

 Second, no enforcement action is present or threatened by the government or anyone else.
While there has been some debate in the past as to whether, under the Supremacy Clause, a court
could grant declaratory or injunctive relief in a *private* action asserting that a state statute was
preempted by a federal statute, that debate has ended with the United States Supreme Court's
recent decision in <u>Armstrong v. Exceptional Child Ctr., Inc.</u>, 135 S. Ct. 1378, 1384, 191 L. Ed.
2d 471 (2015).  In <u>Armstrong</u>, providers of habilitation services under Idaho's Medicaid Plan
sued the Idaho Health and Welfare Department officials seeking to increase reimbursement rates
for habilitation services, claiming that Idaho reimbursed them at rates lower than what the

federal Medicaid Act permits.  Id. at 1380.  The Armstrong Court made clear that no implied right of action exists under the Supremacy Clause, and thus the plaintiffs could not sue under any alleged implied right of action under the Supremacy Clause to seek an injunction requiring Idaho to comply with the federal Medicaid Act.  In Armstrong, the Court plainly held:

> Respondents contend that our preemption jurisprudence—specifically, the fact that we have regularly considered whether to enjoin the enforcement of state laws that are alleged to violate federal law—demonstrates that the Supremacy Clause creates a cause of action for its violation. They are incorrect.  It is true enough that we have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law.  But that has been true not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials.

Id. (citations omitted).[7]   Accordingly, the Plaintiffs do not have an implied right of action under the Supremacy Clause to seek a declaratory judgment here.

Plaintiffs cannot meet the requirements set forth for the Ex parte Young exception to apply.  Accordingly, this Court does not have jurisdiction to issue the declaratory judgment that the Plaintiffs seek.

**D.**     **Plaintiffs' State Law Claims Also Fail to State a Cause of Action Under Florida Law.**

In addition to the arguments that this Court does not have jurisdiction to hear any of the Plaintiffs' claims, there are additional reasons that this Court should dismiss Plaintiffs' claims for Reformation (Count II), Unjust Enrichment (Count III), Conversion (Count IV), and FDUTPA (Counts V and VII).

**1.**     **Plaintiffs Fail to State a Claim for Reformation (Count II).**

As set forth in U.S. Postal Serv. v. Post Office Associates, L.L.L.P., 2011 WL 1792704, at *4 (M.D. Fla. Apr. 22, 2011),

> A party seeking to state a claim for reformation of a contract under the doctrine of mutual mistake must allege four elements: (1) the parties to the contract were *mistaken in their*

---

[7]     On this point, the decision in Armstrong was seemingly unanimous.  Armstrong, 135 S. Ct. at 1385-86 ("the dissent agrees with us that the Supremacy Clause does not provide an implied right of action, and that Congress may displace the equitable relief that is traditionally available to enforce federal law.  It disagrees only with our conclusion that such displacement has occurred here.").

*belief regarding a fact*; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation.

The Plaintiffs, however, have failed to allege any mistake of fact, and accordingly, their claim for reformation fails as a matter of law. Id. Moreover, to the extent Plaintiffs rely upon an alleged fraud to support their reformation claim, they fail to allege such a fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure or Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) ("We have held that pursuant to Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.").

### 2.        Plaintiffs Fail to State a Claim for Unjust Enrichment (Count III).

To state a claim for unjust enrichment under Florida law, a plaintiff must plead that: 1) the plaintiff conferred a benefit upon the defendant; 2) the defendant voluntarily accepted and retained the benefit; and 3) the circumstances are such that it would be inequitable for defendant to retain the benefit. Degutis v. Financial Freedom, LLC, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013). Florida law is clear that "'[u]njust enrichment cannot apply where an express contract exists which allows the recovery.'" Id. (quoting Atlantis Estate Acquisitions, Inc. v. DePierro, 125 So. 3d 889, 893-94 (Fla. 4th DCA 2013)). Therefore, "[u]pon a showing that an express contract exists, an unjust enrichment count will fail." Id.

The unjust enrichment claims of the Category 1 and 2 Plaintiffs fail because of the parties' alleged express contractual relationship. Throughout the Complaint, the Category 1 and 2 Plaintiffs repeatedly plead and acknowledge the existence of an express contract with HealthPort. [Complaint at ¶¶ 23(a), (e), 67, 68, 73, 82, 91, 94]. In particular, they allege that they received invoices from HealthPort itemizing various fees charged by HealthPort for its services, such as a Basic Fee, Per Page Copy fee, Shipping fee, and Electronic Delivery Fee, and that "[t]he demanded amount has been paid" by each Plaintiff to receive the requested medical records. Id. at ¶¶ 34, 35, 52, 53, 56, 57. In light of this alleged express contract, these Plaintiffs' quasi-contract claims fail as a matter of law.

16

Further, the unjust enrichment claims of the Category 1 and 3 Plaintiffs fail to allege that they conferred any benefit upon HealthPort. The Category 1 Plaintiff, for instance, alleges that she has requested copies of her son's medical records, but also specifically alleges that she "has not paid the demanded amount" to HealthPort. [Complaint at ¶¶ 40, 43]. The Category 3 Plaintiff has likewise "inquired" about her son's medical records, but does not allege any payment to HealthPort. Instead, she asks this Court to make a preliminary determination "whether she can direct that records be sent to her son's records be sent [sic] in care of her own attorneys or anyone else." [Id. at ¶¶ 59, 66]. Therefore, these Plaintiffs' claims necessarily fail because there has been no "enrichment," unjust or otherwise.

### 3. Plaintiffs Fail to State a Claim for Conversion (Count IV).

To state a claim for conversion, a plaintiff "must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." Industrial Park Development Corp. v. American Exp. Bank, FSB, 960 F. Supp. 2d 1363, 1366 (S.D. Fla. 2013). At the same time, "[i]t is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot form the basis of a claim for conversion or civil theft." Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). "For money to be the object of conversion 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" Id. (quoting Futch v. Head, 511 So. 2d 314, 320 (Fla. 1st DCA 1987)).

Similar to their unjust enrichment claims, the conversion claims of the Category 1 and 3 Plaintiffs necessarily fail because nothing has been "converted." Neither Plaintiff alleges that she paid or conferred anything to HealthPort at all; rather, they seek preliminary determinations of their payment obligations. [Complaint at ¶¶ 40, 43, 59, 66]. These Plaintiffs therefore fail to state a claim for conversion.

The Category 2 Plaintiffs have not alleged that there was "an obligation to keep intact or deliver the specific money in question, so that such money can be identified." Florida Desk, Inc. v. Mitchell Int'l, Inc., 817 So. 2d 1059, 1061 (Fla. 5th DCA 2002) (reversing judgment where "the funds received by [the defendant] from [the plaintiff] and others were unsegregated and were placed in a general operating account"); see also Gasparini, 972 So. 2d at 1056 (reversing judgment where "the parties did not contemplate that [the defendant] would keep the $300,000 in a separate account, nor was [the defendant] obligated to hold the funds that it received … in a

trust or escrow account").  These Plaintiffs have merely plead that they entered into a routine commercial transaction with HealthPort.  Such a transaction cannot serve as the basis for a conversion claim under Florida law where the conversion concerns money instead of another form of personal property.  Therefore, Count IV should be dismissed.

    4.    **Plaintiffs Fail to State a Claim Under FDUTPA (Counts V and VII) or Declaratory Relief Under FDUTPA (Count I).**

    FDUTPA "declares unlawful 'unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Berry v. Budget Rent A Car Systems, Inc., 497 F. Supp. 2d 1361, 1366 (S.D. Fla. 2007) (quoting Fla. Stat. § 501.204).  "Although the elements of a cause of action under FDUTPA are not defined in the statute, Florida courts have required plaintiffs to establish the following three elements: '1) a deceptive act or unfair practice; 2) causation; and 3) actual damages.'"  In re Edgewater by the Bay, LLLP, 419 B.R. 511, 515 (Bankr. S.D. Fla. 2009) (quoting Kia Motors America Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008)).  "A deceptive practice is one that is 'likely to mislead' consumers [and] [a]n unfair practice is 'one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC, 945 F. Supp. 2d 1331, 1344 (M.D. Fla. 2013)

    As with their unjust enrichment and conversion claims, the FDUTPA claims of the Category 1 and 3 Plaintiffs fail as a matter of law because these Plaintiffs have not alleged that they have suffered any actual damages.  See Hennegan Co. v. Arriola, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) ("'Actual damages' under FDUTPA must directly flow from the alleged deceptive act or unfair practice.  'FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.'") (quoting City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)).

    As to the Category 2 Plaintiffs, FDUTPA claims "under FDUTPA, a cause of action cannot exist for behavior that complies with the terms of a contract."  Amar Shakti Enter., LLC v. Wyndham Worldwide, Inc., 2011 WL 3687855, at *3 (M.D. Fla. Aug. 22, 2011); Zlotnick v. Premier Sales Grp., Inc., 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006) aff'd, 480 F.3d 1281 (11th Cir. 2007) (dismissing FDUTPA claim where alleged unfair practice "complied with the terms" of the parties' agreement).

All of the named Plaintiffs' claims under FDUTPA fail for an additional reason: a plaintiff cannot contend that the violation of just any statute serves as a predicate for a FDUTPA claim.  See Double AA Int'l Inv. Group, Inc. v. Swire Pacific Holdings, Inc., 674 F. Supp. 2d 1344, 1358 (S.D. Fla. 2009) ("[T]o deem any statutory violation a *per se* violation of the FDUTPA would be an overly broad and unfounded reading of the statute….").  Rather, when a plaintiff relies upon a violation of a statute as the basis for a FDUTPA claim, the statute "must be of the kind that proscribe[s] unfair trade practices or unfair methods of competition; not … a violation of *any* law or statute that may have some benefit to consumers."  Edgewater, 419 B.R. at 516 (emphasis added); see also Fla Stat. § 501.203(3)I (only a violation of any 'law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices' may serve as a predicate for a FDUTPA claim).  Because HIPAA is not a statute that proscribes unfair trade practices or unfair methods of competition, an alleged violation of HIPAA cannot serve as the basis for a claim under FDUTPA.  See e.g., King v. JFK Medical Center Limited Partnership d/b/a HealthPort Technologies, LLC, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (holding that because HIPAA's fee provisions "do not proscribe unfair trade practices on unfair methods of competition, it does not fall within the purview of FDUTPA and cannot be the basis of a FDUTPA claim.").

Additionally, since Plaintiffs' claims for FDUTPA fail as a matter of law, Plaintiffs' claim for declaratory relief under FDUTPA also fails as a matter of law.  [Complaint at ¶ 23(k) (seeking declaratory relief pursuant to FDUTPA, Fla. Stat. 501.211(1))].  A claim for declaratory relief pursuant to FDUTPA can only be asserted where a plaintiff has stated a claim for a violation of FDUTPA.  See Galstaldi v. Sunvest Communities USA, LLC, 637 F. Supp. 2d 1045, 1057-58 (S.D. Fla. 2009).  Accordingly, Counts I, V and VII fail as a matter of law.

**5.      Plaintiffs Fail to State a Claim for Unlawful Debt.**

Plaintiffs' claims under Fla. Stat. § 559.72(9) are nothing more than a further attempt to assert a private cause of action under HIPAA when the courts have determined that the plaintiffs' claims for enforcement of HIPAA are within the "*exclusive province of the Secretary of Health and Human Services not the hands of private citizens.*"  Sheppard v. Johnson, 2011 WL 5547122 at *3 (N.D. Fla. Nov. 15, 2011) (emphasis added).  Moreover, even if the case were otherwise, there is no factual basis for such a claim given the release of these Plaintiffs by HealthPort here.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[8]

Pursuant to Local Rule 7.1, counsel for HealthPort certifies that they have conferred with the parties to this action in a good faith effort to resolve the issues raised in this motion, and the issues could not be resolved as to the Plaintiffs.  Counsel for HealthPort certifies that it is unaware of any non-parties who may be affected by the relief requested in this motion.

Respectfully submitted this 23rd day of September, 2015.

Bryan Cave LLP
1201 W. Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:   (404) 572-6999

By: */s/ Jennifer B. Dempsey*
William V. Custer
Georgia Bar No. 202910
Bill.Custer@Bryancave.com
Jennifer B. Dempsey
Georgia Bar No. 217536
Jennifer.Dempsey@Bryancave.com

Jones, Foster, Johnston &Stubbs
505 S. Flagler Drive
Suite 1100 P.O. Box 3475
West Palm Beach, FL 33402-3475
Telephone:  (561)659-3000
Facsimile: (561)650-5300

By: /s/ Roberto M. Vargas
Roberto M. Vargas, Esq.
rvargas@jonesfoster.com
*Attorneys for HealthPort  Technologies, LLC*

---

[8]  HealthPort joins in the arguments asserted in the other Defendants' motions to dismiss, and incorporates those arguments herein to the extent relevant to HealthPort.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION

JAMES WILCHER, MARY POWER,           )
JESSIE HEATON as parent and national )
guardian of DYLAN HEATON, and        )
JUSTIN KOLOGE by and through         )
Jeremy M. Kologe and Theresa F. Kologe )
as plenary guardians of his person and )
property,                            )
                                     )
     Plaintiffs,                  )        Case No.: 2:15-cv-14297-RLR
                                     )
v.                                   )
                                     )
HEALTHPORT TECHNOLOGIES, LLC,        )
LAWNWOOD MEDICAL CENTER, INC.,       )
HCA HEALTH SERVICES OF FLORIDA,      )
INC., d/b/a ST. LUCIE MEDICAL        )
CENTER, and ST. MARY'S MEDICAL       )
CENTER, INC.                         )
                                     )
     Defendants.                  )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on the 23rd day of

September, 2015.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

Jones, Foster, Johnston &Stubbs
Attorneys for HeatlhPort Technologies, LLC
505 S. Flagler Drive
Suite 1100 P.O. Box 3475
West Palm Beach, FL 33402-3475
561-659-3000
Fax: 561-650-5300

21

By: /s/ Roberto M. Vargas
Roberto M. Vargas, Esq.
Florida Bar No. 151106
rvargas@jonesfoser.com

p:\docs\27021\00009\pld\1n87211.docx